Comstock, J.
Both parties trace their title to the wheat in controversy to D. O. Dickinson, who was the former owner, and held it in store at Littlefort, Wisconsin. The defendant claims through a sale made by Dickinson to one Shuttleworth on the 18th of February, 1848. If that sale was effectual to pass the title, it is not now pretended that there is any ground on which the plaintiffs can recover in this suit. The sale to the person under whom they claim, was about two and a half months junior in point of time.
The sale to Shuttleworth was by a writing in the form of a present transfer of six thousand bushels of wheat, at seventy cents per bushel. Ho manual delivery was then made, but instead thereof the vendor executed and delivered to the vendee another instrument, declaring that he had received in store the six thousand bushels subject to the vendee’s order; of the *332 price $2,600 was paid down, and the residue $1,600 which was to be paid at a future day, the purchaser afterwards offered to pay, according to the agreement. So far the contract had all the requisites of a perfect sale. The sum to be paid by the purchaser was ascertained, because the number of bushels and the price per bushel were specified in the contract. Although the article was not delivered into the actual possession of the purchaser, yet the seller, by the plain terms of his agreement, constituted himself the bailee, and henceforth stood in that relation to the purchaser and to the property. That was equal in its results to the most formal delivery, and no argument is required to show that the title was completely divested, unless a difficulty exists yet to be considered.
The quantity of wheat in store to which the contract related, was estimated by the parties at about six thousand bushels. But subsequently, after Dickinson made another sale of the same wheat to the party under whom the plaintiffs claim, it appeared on measurement that the number of bushels was six thousand two hundred and forty-nine, being an excess of two hundred and forty-nine bushels. When Shuttleworth bought the six thousand bushels, that quantity was mixed in the storehouse with the excess, and no measurement or separation was made. The sale was not in bulk, but precisely of the six thousand bushels. On this ground it is claimed, on the part of the plaintiffs, that in legal effect the contract was executory, in other words a mere agreement to sell and deliver the specified quantity, so that no title passed by the transaction. It is not denied, however, nor does it admit of denial, that the parties intended a transfer of the title. The argument is, and it is the only one which is even plausible, that the law overrules that intention, although expressed in plain written language, entirely appropriate to the purpose.
It is a rule asserted in many legal authorities, but which may be quite as fitly called a rule of reason and logic as of law, that in order to an executed sale, so as to transfer a title from one party to another, the thing sold must be ascertained. This is a self-evident truth, when applied to those *333 subjects of property which are distinguishable by .their physical attributes from all other things, and, therefore, are capable of exact identification. No person can be said to own a horse or a picture, unless he is able to identify the chattel or specify what horse or what picture it is that belongs to him. It is not only legally, but logically, impossible to hold property in such things, unless they are ascertained and distinguished from all other things; and this I apprehend is the foundation of the rule that, on a sale of chattels, in order to pass the title, the articles must, if not delivered, be designated, so that possession can be taken by the purchaser without any farther act on the part of the seller.
But property can be acquired and held in many things which are incapable of such an identification. Articles of this nature are sold, not by a description which refers to and distinguishes the particular thing, but in quantities, which are ascertained by weight, measure or count; the constituent parts which make up the mass being undistinguishable from each other by any physical difference in size, shape, texture or quality. Of this nature are wine, oil, wheat and the other cereal grains, and the flour manufactured from them. These can be identified only in masses or quantities, and in that mode, therefore, they are viewed in the contracts and dealings of men. In respect to such things, the rule above mentioned must be applied according to. the nature of the subject. In an executed and perfect'sale the things sold, it is true, must be ascertained. But as it is not possible in reason and philosophy to identify each constituent particle composing a quantity, so the law does not require such an identification. Where the quantity and the general mass from which it is to be taken are specified, the subject of the contract is thus ascertained, and it becomes a possible result for the title to pass, if the sale is complete in all its other circumstances. An actual delivery indeed cannot be made unless the whole is transferred to the possession of the purchaser, or unless the particular quantity sold is separated from the residue. But actual delivery is not indispensable in any case in order to pass a *334 title, if the thing to be delivered is aseertainéd, if the price is paid or a credit given, and if nothing further remains to be done in regard to it.
' It appears to me that a very simple and elementary inquiry lies at the foundation .of the present case. A quantity of wheat" being in store,-is. it-possible in. reason and in law for-one man to own a given portion of-it and for another man to own the-residue without a separation of the parts ? To bring the inquiry to the’facts of the case: in the storehouse, of Dickinson there- was a quantity not precisely known. In any conceivable circumstances could Shuttleworth become owner of six thousand bushels, and Dickinson of the residue, which ’turned out to be two hundred and forty-nine bushels, without the portion of either being divided from the other? The answer to- this inquiry is plain. Suppose a third person, being the prior owner of the whole, had given to S. a bill of sale of six thousand bushels; and then one to D. for the residue more or less, intending to pass to each the title, and expressing that intention in plain words, what would have-been the result? ■The-former, owner, most certainly would have parted with all his title. -If;.then, the two purchasers did not acquire it no one could own the wheat, and the title would be lost. This would be an.absurdity..-.Buf if the parties thus purchasing.could and would be the owners, how would-they hold it? . Plainly according to their contracts. - One would be entitled to six thousand;búshels, and the other to what remained after that ■quantity was substracted.
Again suppose, Dickinson having in store and owning two-hundred and forty-nine bushels, Shuttleworth had deposited with him six thousand bushels for storage merely, both parties agreeing, that the quantities might be mixed. This would be a case-of confusion of. property where neither would lose his title.- In the law of bailments it- is entirely settled that S:, being the bailor of the six thousand bushels, would lose nothing by the mixture, and, it being done by consent, it is also clear that the bailee would lose nothing. (Story on Bailments, § 40; 2 Bl. Com., 405.)
*335 These and other illustrations which might be suggested, demónstrate the possibility of a divided ownership in the six thousand two hundred and forty-nine bushels of wheat. If, then, the law admits that the property, while in mass, could exist under that condition, it was plainly competent for the parties to the sale in question, so to deal with each other as to effectuate that result. One of them being the owner of the whole, he could stipulate and agree, that the other should thenceforth own six thousand bushels without a separation from the residue. And this, I think, is precisely what was done. The six thousand bushels might have been measured and delivered to the purchaser, and then the same wheat might have been redelivered to the seller under a contract of bailment. In that case the seller would have given his storehouse receipt in the very terms of the one which he actually gave; and he might, moreover, have mixed the wheat thus redelivered with his own, thereby reducing the quantity sold and the quantity unsold again to one common mass. How the contract of sale and of bailment, both made at the same time, produced this very result. The formalities of measurement and delivery pursuant to the sale, and of redelivery according to the bailment—resulting in the same mixture as before—most assuredly were not necessary in order to pass the title, because these formalities would leave the property in the very same condition under which it was in fact left; that is to say, in the actual custody of the vendor, and blended together in a common mass. Those formal and ceremonial acts were dispensed with by the contract of the parties. They went directly to the result without the performance of any useless ceremonies, and it would be strange, indeed, if the law denied their power to do so.
There are in the books a considerable number of cases having a real or some apparent bearing upon the question under consideration. Some of them very unequivocally support the defendant’s title under the sale to Shuttleworth. A few only of these will be cited. In Whitehouse v. Frost (12 East., 614), the vendors owned forty tons of oil secured in one cistern, and they sold ten tons out of the forty, but the quantity *336 sold was not measured or delivered. The purchaser sold the same ten tons to another person, and gave a written order on v the original vendors, which, on being presented, they accepted, by writing the word “ accepted ” on the face of the order, and signing their names. It was held by the English Common Pleas that the title passed; considerable stress being laid on the acceptance of the order, which, it was said, placed the vendors in the relation of bailees to the quantity sold. This was in 1810. In the following year the case of Jackson v. Anderson, (4 Taunt., 24), was decided in the King’s Bench. That was an action of trover for one thousand nine hundred and sixty pieces of coin called Spanish dollars. Mr. Fielding, at Buenos Ayres remitted to Lnycock & Co., at London, $4,700, and advised the plaintiffs that one thousand nine hundred and sixty of the number were designed for them in payment for goods bought of them. Laycock & Co., received the four thousand seven hundred pieces and pledged the whole of them to the defendant, who sold them to the Bank of England. It was held: 1. That the letter of advice was a sufficient appropriation of $1,960 to the plaintiffs. 2. That the plaintiffs and defendant did not become joint-tenants or tenants in common of the dollars. 3. That although.no specific dollars were separated. from the residue for the plaintiffs, yet as the defendant had converted the whole, trover would lie for the plaintiff’s share. Of course the action in its nature directly involved the plaintiff’s title, and it was held that the sale or appropriation of a part without any separation was a perfect sale. In Pleasants v. Pendleton (6 Rand., 473), the sale (omitting immaterial circumstances) was of one hundred and nineteen out of one hundred and twenty-three barrels of flour, situated in a warehouse, all of the same brand and quality. It was held by the Virginia Court of Appeals, upon very elaborate consideration, and after a review of all the cases, that the title was transferred by the sale. See also Damon v. Osborn (1 Pick., 477); Crofoot v. Bennett (2 Comst., 258). In the last mentioned, which was decided in this court, the sale was of forty-three thousand bricks in an unfinished kiln containing a larger quantity. A formal *337 possession of the whole brick-yard was taken by the purchaser. It was held that he acquired title to the forty-three thoueand, although no separation was made. In the opinion of Judge Stbostg, the case was made to turn mainly on a supposed delivery of the whole quantity. But, with deference, that circumstance does not appear to me to have been the material one, inasmuch as all the bricks confessedly were not sold. The delivery, therefore, did not make the sale, and if part could not be sold without being separated I do not see how a formal delivery of the whole brick-yard could cure the difficulty. The learned judge speaks of the transaction as a delivery of the whole quantity “ with the privilege of selection.” But assuming, as he did, that the want of selection or separation was the precise difficulty to be overcome, it is not easy to see how a privilege to select could change the title before the selection was actually made. The case, therefore, it seems to me, can only stand on the ground that the sale was, in its nature, complete; the formal delivery of the whole being doubtless a circumstance entitled to weight in arriving at the intention of the parties. The case is, in short, a strong authority to prove that, in sales by weight, measure or count, a separation of the part sold from the mass is not in all cases a fundamental requisite.
Referring now to cases where it has been held that sales of this general nature were incomplete, it will he found that they are not essentially and necessarily opposed to the conclusion that, in the instance before us, the title was changed. In White, assignee, &c., v. Wilks (5 Taunt, 176), a merchant sold twenty tons of oil out of a stock consisting of different large quantities in different cisterns, and at various warehouses. The note of sale did not express the quality or kind of oil sold, or the cistern or warehouse from which it was to be taken, and the purchaser did not even know where the particular oil lay which was to satisfy the contract. Very clearly the title could not pass upon such a sale; and so it was held, although the seller was entitled by the contract to charge “ Is. per ton per week rent,” for keeping the oil. A very different *338 question would have been presented if the cistern from which the twenty tons were to be taken had been specified. The mass and quality would then have been ascertained. As it was, the subject of the contract was not identified in any manner. The remarks of the judge, evidently not .made with much deliberation, must be construed with reference to the particular facts of the case.
In Austen v. Craven (4 Taunt., 644), there was a contract to sell two hundred hogsheads of sugar, to be of four different kinds and qualities which were specified. It did not appear that the seller, at the time of the contract, had the sugar on hand, or any part of it, and the fact was assumed to be otherwise. The sale was, moreover, at so much per cwt., requiring that the sugar should be weighed in order to ascertain the price. In these circumstances the case was considered plainly distinguishable from Whitehouse v. Frost (supra), and it was held that the'title did not pass. I do not see the slightest ground for questioning the decision, although, perhaps, one or two remarks of Chief Justice Mansfield are capable of a wider application than the facts of the case would justify.
The two cases last mentioned have been not unfrequently cited in various later English and American authorities, which need not be particularly referred to. Some of these authorities may suggest a doubt whether the title passes on a mere sale note by measure or weight out of a larger quantity of the same kind and quality, there being no separation and no other circumstances clearly evincing an intention to vest the title in the purchaser. It is unnecessary now to solve that doubt, because none of the decisions' announce the extreme doctrine, that where, in such cases, the parties expressly declare an intention to change the title; there is any legal impossibility in the way of that design. Upon a simple bill of sale of gallons of oil or bushels of wheat, mixed with an ascertained ’and defined larger quantity, it may or may not be considered that the parties intend that the portion sold shall be measured before the purchaser becomes invested with the title. That ' may be regarded as an act remaining to be done, in which *339 both parties have a right to participate. But it is surely competent for the vendor to say in terms, that he waives that right, and that the purchaser shall become at once the legal owner of the number of gallons or bushels embraced in the sale. If he cannot say this effectually, then the reason must be that two men cannot be owners of separate quantities or proportions of an undistinguishable mass.. That conclusion would be a naked absurdity, and I have shown that such is not the law. In the 'case before us the vendor not only executed his bill of sale professing to transfer six thousand bushels of wheat, but waiving all further acts to be done,. in order to complete the transaction, he acknowledged himself, by another instrument, to hold the same wheat in store as the bailee thereof for the purchaser. If his obligations from that time were not simply and precisely those of a bailee, it is because the law would not suffer him to stand in that relation to the property for the reason that it was mixed with his own. But no one will contend for such a doctrine.
I repeat it is unnecessary to refer to all the cases, or to determine between such as may appear to be in conflict with each other. Hone of them go to the extent of holding that a man cannot, if he wishes and intends so to do, make a perfect sale of part of a quantity without actual separation, where the mass is ascertained by the contract and all parts are of the same value and undistinguishable from eachbther.
One of the cases, however, not yet cited, deserves a brief consideration, because it was determined in this court, and has been much relied on by the plaintiffs counsel. I refer to Gardiner v. Suydam (3 Seld., 357). The owner of flour delivered it in various parcels to a warehouseman, and from time to time took receipts from him. One of these receipts was held by the defendants and others by the plaintiff, both parties having accepted and paid drafts on the faith thereof. The defendant’s receipt was the first in point of time, and was for five hundred and thirty-six barrels, being given at a time when in fact there were but two hundred and one barrels in the warehouse, so that it covered three hundred and thirty-five *340 more than were then on hand. But other quantities were subsequently delivered at the warehouse, all of the same kind and quality, and the defendants, in fact, received by shipment to them, five hundred barrels. For the conversion of this quantity they were sued by the plaintiffs who had failed to receive the flour which their receipts called for. It cannot fail to be seen from this statement that the defendants, having the first receipt and receiving no more flour than it specified were entitled to judgment by reason of the priority of their title; and this ground of decision is very clearly stated in the opinion of the Chief Judge. He thought if the transfer of the receipts could pass the title to the flour, notwithstanding the mixture of all the quantities together, that the one held by the defendants entitled them not only to the two hundred and one barrels in store when it was given, but also to so many barrels delivered in store afterwards as were necessary to make up their number. This view, which appears to me correct, was fatal to the plaintiffs’ case. But in another aspect of the controversy, the learned chief judge was of opinion that the transfer to the plaintiffs of the receipts held by them passed no title, on the ground that the quantities which they respectively covered were all mixed together in the storehouse. Assuming the correctness of that view—which I am constrained to question—the case is still unlike the present one. The transfer of a warehouseman’s receipt, given to the owner, was certainly no more than a simple sale note of the specified number of barrels; and where, in such cases, that is the whole transaction between vendor and vendee I have already admitted a doubt, suggested by conflicting cases, whether the title passes. If the owner of the flour had held it in his own warehouse, and had not only given a bill of sale ■of a portion of it, but had himself executed to the purchaser another instrument declaring that he held the quantity sold as bailee and subject to order, then the case would have resembled the one now to be determined.
j We are of opinion, therefore, both upon authority and clearly upon the principle and reason of the thing, that the *341 defendant, under the sale to Shuttle-worth, acquired a perfect title to the six thousand bushels of wheat. Of that quantity he took possession at Buffalo, by a writ of replevin against the master of the vessel in which the whole had been transported to that place. For that taking the suit was brought, and it results that the plaintiff cannot recover. It is unnecessary to decide whether the parties to the original sale became tenants in common. If a tenancy in common arises in such cases, it must be with some peculiar incidents not usually belonging to that species of ownership. I think each party would have the right of severing the tenancy by his own act: that is, the right of taking the portion of the -mass which belonged to him, being accountable only if he invaded the quantity which belonged to the other. But assuming that the case is one of strict tenancy in common, the defendant became the owner of six thousand and the plaintiffs of two hundred and forty-nine parts of the whole. As neither could maintain an action against the other, for taking possession merely of the whole, more clearly he cannot if the other takes only the quantity which belongs to him.
The judgment must be reversed and a new trial granted.
Gray and Grover, Js., dissented; Strong, J., expressed himself, as inclined to concur, if necessary to a decision, but it being unnecessary, he reserved his judgment.
Judgment reversed and new trial ordered.